## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:22-cr-11 |
| ELHAJ KEITA, | |
| Defendant. | |

## UNITED STATES' POSITION ON SENTENCING

The United States of America, through undersigned counsel, submits the following position regarding the sentencing of defendant, ELHAJ KEITA. The United States has no objections to the Presentence Report and concurs with its calculation of a Sentencing Guidelines range of 0 to 6 months' imprisonment on Count One. As explained below, the Court should impose a sentence at the high end of this range. Such a sentence is sufficient but not greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

### Discussion

During sentencing, federal courts must follow a multistep process that analyzes both procedural and substantive concerns. First, the court must correctly calculate the applicable Guidelines range. *See Gall v. United States*, 552 U.S. 38, 49 (2007). Second, "the court must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (internal quotation marks omitted). To the extent the Court deems some deviation from the Guidelines range appropriate, the Court must give serious consideration to the extent of the deviation and must adequately explain it "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 365 (internal

quotation marks omitted).  In all events, the Court must impose a sentence that takes into consideration the factors listed under 18 U.S.C. § 3553(a).  *See id.* at 364.

## I.   THE PRESENTENCE INVESTIGATION REPORT'S CALCULATION OF THE ADVISORY GUIDELINE RANGE AND THE PARTIES' JOINT OBJECTION

The PSR calculates a total offense level of 6 on Count One, which charged the defendant with Interstate Communication of a Threat to Injure, in violation of 18 U.S.C. § 875(c).  PSR ¶ 23 (ECF No. 61).  This range includes a four-level reduction for a single threat involving little to no deliberation and another two-level reduction for acceptance of responsibility.  PSR ¶¶ 16, 22. With a criminal history category of I, defendant's advisory range is 0 to 6 months' imprisonment.  PSR ¶ 32.

## II.  THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553 SUPPORT A SENTENCE OF 87 MONTHS

Under 18 U.S.C. § 3553(a),  the Court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in § 3553(a)(2). Specifically, the Court's sentence must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).  Section 3553(a) further "provides that in determining a particular sentence, a sentencing court must consider seven enumerated *factors*," *United States v. Shortt*, 485 F.3d 243, 247 (4th Cir. 2007) (emphasis in original), including the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines, any pertinent policy statements, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense, 18 U.S.C. § 3553(a)(1), (3)-(7).

"The sentencing *purposes* identified in § 3553(a)(2)(A) [through] (D) are the four foundational purposes of sentencing that have long prevailed throughout [American] jurisprudence—(1) punishment, (2) deterrence, (3) incapacitation, and (4) rehabilitation." *Shortt*, 485 F.3d at 248-49 (citing Ilene H. Nagel, *Structuring Sentencing Discretion: The New Federal Sentencing Guidelines*, 80 J. Crim. L. & Criminology 883 (1990)) (emphasis in original). "[M]ost of the specified purposes [of sentencing] listed in [§ 3553(a)(2)] hardly connote less punishment." *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006). Indeed, the first three— respect for the law, just punishment, deterrence, and protection of the public—"certainly do not suggest leniency; only one listed purpose," rehabilitation, "has a softer tone." *Id.* at 58 n.3 (citing 18 U.S.C. § 3553(a)(2)). And, "[a]lthough still relevant," Congress and the Sentencing Commission have recognized that "th[is] fourth purpose … [is] insufficient, standing on its own, to justify a particular sentence." *Shortt*, 485 F.3d at 249 (citing S. Rep. No. 98-225, at 38 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3221). Instead, the Senate Committee responsible for drafting the Sentencing Reform Act of 1984 "placed special emphasis on the first stated purpose— the need 'to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Id.* (citing S. Rep. No. 98-225 at 75). "As it observed, the first purpose 'should be reflected clearly in *all* sentences." *Id.* (emphasis in *Shortt*).

A sentence that fails to serve the purposes of sentencing outlined in § 3553(a)(2) is just as unreasonable as one that is greater than necessary to serve such purposes. *United States v. Dowell*, 771 F.3d 162, 176 (4th Cir. 2014) (quoting *Shortt*, 485 F.3d at 248).

### A.  Nature and Circumstances of the Offense

After missing an intercity bus from Richmond to New York in April 2021, the defendant sought a refund of his fare. PSR ¶¶ 6.3-4. When the bus company verified that the bus had timely picked up other passengers on the same route, it denied the defendant's request for a refund. PSR

¶ 6.4.  Angered by this decision, the defendant sent an email to the company's German-based customer service center threatening to kill 10 customers before week's end, emphasizing "this is no THREAT IT'S A PROMISE."  PSR ¶ 6.5.  Thankfully, the defendant did not carry out this threat.

The defendant was arrested in New York on April 4, 2022, and ultimately released on pretrial supervision.  PSR ¶ 2.  Within two months, a petition was filed alleging that the defendant had violated the terms of his supervision by disregarding the restrictions of his location monitoring on a near daily basis.  Petition at 2-3 (ECF No. 23); *see also* PSR ¶ 2.  The defendant also repeatedly berated his pretrial service officer with derogatory remarks when confronted with these violations.  Petition at 3.  Similarly, when the defendant was assessed for mental health and substance abuse treatment, he reportedly threatened the counselor with reference to a purported prior arrest for assault.  *Id.* at 4.  When confronted, he became agitated and inappropriate, making derogatory comments about the counselor's perceived sexuality.  *Id.* The defendant persisted in near-constant violations of his location monitoring until his arrest on June 26, 2022.  PSR ¶¶ 2, 6.8; *see also* Addendum at 2 (ECF No. 47).  On that date, law enforcement officers had to break down the door of the defendant's residence after he refused to open it.  PSR ¶ 2.  While in the holding room at the FBI's New York office, the defendant destroyed a chair, damaged drywall, and urinated on the floor, causing more than $1,000 in damage to government property.

### B.    History and Characteristics of the Defendant

The defendant has a long history of engaging in threatening behavior resulting in his hospitalization on three prior occasions.  ECF No. 61-2 at 6-8 (reporting hospitalizations in March 2015, December 2015, and January 2016).  Specifically, records reveal increasingly violent, aggressive, and threatening behavior, including threats to stab his mother and siblings and break household items.  *Id.* The defendant has also been convicted of disorderly conduct and arrested for

making terroristic threats.  PSR ¶¶ 25, 30.  This behavior is consistent with the defendant's documented history of disruptive mood dysregulation disorder ("DMDD"), a depressive disorder characterized by chronic, severe irritability that manifests in frequent verbal and behavioral outburst that are inappropriate for the situation or provocation.  ECF No. 61-1 at 6.  According to Dr. Sharon Kelley, DMDD can be a precursor to other disorders, including bipolar disorder and, more commonly, depression and anxiety disorders.  *Id.*

### C.      Seriousness of the Offense

The fact that the defendant's behavior stems from this health condition does not mitigate its seriousness.  For years, the defendant has apparently responded to even minor irritations with serious and violent threats.  Despite describing his prior hospitalizations as "cool" and generally enjoyable, the defendant has a history of failing to continue clearly needed treatment, including cessation of effective medication.  ECF No. 61-2 at 8.  Most recently, when the defendant was referred for a treatment evaluation, he threatened the counselor, escalating to other inappropriate comments necessitating termination of the interview.  Petition at 4 (ECF No. 23).  In light of this history, the defendant's clear need for mental health treatment should not serve to mitigate the need for a significant sentence of incarceration.  His threatening communication to FlixBus, coupled with his egregious disregard of the conditions of his pretrial release counsel strongly for a sentence at the high end of the applicable guideline range, particularly when that range already accounts for the mitigating fact that the defendant's threat was not premeditated or carried out. The defendant's mental health history and his conduct while on pretrial release also support the imposition of a three-year term of supervised release to ensure that the defendant pursues and receives all recommended mental health treatment and medication.

Further, although the defendant did not carry out the threatened attack, his actions still imposed significant burdens.  In the modern era of increasing incidents of mass and indiscriminate

violence, authorities must take such threats seriously.  They have to identify the perpetrator, find him, and determine whether he is likely to carry out the threatened violence.  Doing so requires time and resources that could be far better spent in other ways to safeguard public safety.

**D.      Need to Deter Future Criminal Conduct and Promote Respect for the Law**

A sentence at the high end of the applicable guideline range is also needed to promote respect for the law and to achieve the goals of specific and general deterrence.  A sentence that "fail[s] to recognize the seriousness of [an] offense would promote disrespect for the law." *Shortt*, 485 F.3d at 429.  And, it is critical that a defendant with a long history of threatening serious violence be deterred from that conduct and motivated to address the conditions that give rise to that behavior.

The Court must also consider how to deter others as a general matter from engaging in similar conduct.  *See, e.g.*, *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences.  If either is eliminated or minimized, the deterrent effect is proportionally minimized.").  Absent a term of imprisonment available to punish the defendant's threat of serious and indiscriminate violence, general deterrence—"the effort to discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of imprisonment is likely to follow"—will not be achieved.  *United States v. Bergman*, 416 F. Supp. 496, 499 (S.D.N.Y. 1976).  A sentence at the high end of the advisory guideline range is necessary to send the appropriate message to both the defendant and others like him that those who repeatedly engage in this conduct will be caught and punished significantly.

**E.      Need to Protect the Public from the Defendant's Future Criminal Conduct**

Just as this Court's sentence must accomplish clearly needed deterrence, a significant sentence is needed to provide adequate protection to the public from future criminal conduct by

this defendant.  The defendant's long history of aggression and threats of violence evince the need to further protect the public from such menacing conduct, as does the defendant's behavior while on pretrial release, which itself demonstrates a persistent and troubling lack of respect for the law.

### F.     The Need to Provide the Defendant with Medical Care

It is certainly true that the defendant could benefit from continued mental health treatment and medication.  He has received medication and stabilized since his arrest in June.  Thus, continued incarceration accompanying a sentence at the high end of his guidelines range will not deny him needed care.  Likewise, a lengthy sentence of supervised release will work to ensure the defendant's continued compliance following his release.

### G.     Need to Avoid Unwarranted Sentencing Disparities

There is no compelling reason to treat the differently from those who have engaged in comparable criminal conduct.  His offense fits squarely within the recommended range and involved aggravating circumstances of his repeated pretrial release violations.  A sentence at the high end of that range is, therefore, appropriate and needed to accomplish the purposes of sentencing.

### CONCLUSION

For the reasons discussed above, the United States respectfully requests that the Court impose a sentence at the high end of the applicable guideline range on Count One.  Such a sentence is sufficient, but not greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a)(2) and is supported by the remaining § 3553(a) factors.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:   _/s/  Kaitlin G. Cooke_____
     Kaitlin G. Cooke
     Virginia Bar No. 83935

United States Attorney's Office
919 East Main Street
Suite 1900
Richmond, VA 23219
Ph:  (804) 819-5400
Fax: (804) 771-2316
Email: Kaitlin.Cooke@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **October 13, 2022**, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF)

to all parties of record.


Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:   _/s/  Kaitlin G. Cooke_____
Kaitlin G. Cooke
Virginia Bar No. 83935
United States Attorney's Office
919 East Main Street
Suite 1900
Richmond, VA 23219
Ph:  (804) 819-5400
Fax: (804) 771-2316
Email: Kaitlin.Cooke@usdoj.gov